## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BIAGIO AGUGLIA,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 09-00558** |
| | ) | **Electronically Filed** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

### I.    Introduction

Plaintiff Biagio Aguglia ("Plaintiff") brings this action pursuant to 42 U.S.C. §405(g), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. §1381, *et.seq.*  Consistent with the customary practice in the Western District of Pennsylvania, the parties have filed cross-motions for summary judgment on the record developed during the administrative proceedings.  Doc. Nos. 6 and 8.

Upon consideration of the Commissioner's decision, the parties' motions for summary judgment and accompanying briefs, and the evidence contained in the administrative record, the Court finds that the determination of the Commissioner should be remanded to the administrative law judge ("ALJ") for rehearing, pursuant to 42 U.S.C. §405(g), for further consideration. The Court will, therefore, grant Plaintiff's motion for summary judgment and deny the Commissioner's motion for summary judgment.

1

## II.    Procedural History

Plaintiff applied for DIB on January 12, 2006, alleging disability as a result of a back condition, with an alleged onset date of May 18, 2005. R.59- 62 ,75-79.  After his claim was initially denied by the Commissioner, Plaintiff filed a timely request for an administrative hearing on August 7, 2006. R. 58.  A hearing was held before an ALJ on November 16, 2007, at which Plaintiff, who was represented by counsel, appeared and testified. R. 27- 47.  The ALJ issued an unfavorable decision on December 12, 2007, finding that Plaintiff was not disabled under the meaning of the SSA. R. 19-24. Plaintiff thereafter filed a request for review of the hearing decision, R. 5-15, which was denied by the Appeals Council on March 13, 2009. R. 1-3.

Having exhausted his administrative remedies, Plaintiff commenced an action against the Commissioner by filing a complaint in this Court. Doc. No. 1.  Plaintiff filed a motion for summary judgment and brief in support on August 28, 2009. Doc. Nos. 6 and 7.  The Commissioner likewise filed a motion for summary judgment and brief in support on September 2, 2009. Doc. Nos. 8 and 9. Said motions are the subject on this memorandum opinion.

## III.    Statement of the Case

In his decision, dated December 12, 2007, the ALJ made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2.    The claimant has not engaged in substantial gainful activity since May 18, 2005, the alleged onset date (20 C.F.R. 404.1520(b) and 404.1571, *et seq*.).

3.    The claimant has the following severe impairment: a herniated disc, status post microdiscectomy. (20 C.F.R. 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets

2

or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).

5.      ... [T]he claimant has the residual functional capacity to perform the full range of light work.

6.      The claimant is capable of performing past relevant work as a car salesman. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565).

7.      The claimant has not been under a disability, as defined in the Social Security Act, from May 18, 2005 through the date of [the] decision.

R. 21-24.

Plaintiff argues that the ALJ failed to consider the entire evidentiary record, including the medical evidence of record and Plaintiff's testimony. Doc. No. 7 at 5. Further, Plaintiff argues that the ALJ failed to reconcile conflicting medical evidence, Doc. No. 7 at 5,7, and failed to give appropriate weight to the opinions of Plaintiff's treating physicians. Doc. 7 at 11.

**IV.     Standards of Review**

Judicial review of the Commissioner's final decisions on disability claims is provided by statute.  42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2].  Section 405(g) permits a district court to review

_____

[1] Section 405(g) provides in pertinent part:
Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .
42 U.S.C. § 405(g).

[2] Section 1383(c)(3) provides in pertinent part:
The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.
42 U.S.C. § 1383(c)(3).

3

transcripts and records upon which a determination of the Commissioner is based.  Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding  standards under Title XVI; 42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a).  *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

Substantial Evidence

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive.  *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v. Secretary of HHS*, 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401 (citation omitted). *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Ventura*, 55 F.3d at 901 (*quoting Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir. 1988).

The United States Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  "A single piece of evidence will not satisfy the substantiality test if

4

the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).  The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner.  *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder.  *Rutherford*, 399 F.3d at 552. In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

Five Step Determination Process

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775,

777 (3d Cir. 1987);  42 U.S.C. § 423 (d)(1) (1982).[3]

When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB benefits, the Commissioner utilizes the familiar five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920 (1995).  *See Sullivan*, 493 U.S. at 525.  The Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir.1999):

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C .F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.

> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .

> If the claimant is unable to resume her former occupation, the evaluation moves to the final *step* [*five*]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must*

---

[3]

For purposes of DIB, Plaintiff's date of last insured is December 31, 2010. R. 75. To qualify for DIB under Title II of the SSA, a claimant is required to show that he or she was disabled between the alleged disability onset date and the date of last insured.  *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 200-01 (3d Cir. 2008) (citing *Kane v. Heckler*, 776 F.2d 1130, 1131 n. 1 (3d Cir. 1985)).  Therefore, in this case, Plaintiff is required to show that he became disabled after the alleged onset date, May 15, 2008.

> *analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted). *See also Rutherford*, 399 F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1)  by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment.  *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983);  *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that the claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ."  *Campbell*, 461 U.S. at 461 (*citing* 42 U.S.C. § 423 (d)(2)(A)). In order to prove disability under this second method, the plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from

returning to his or her former job (Steps 1-2, 4). *Stunkard,* 841 F.2d at 59; *Kangas*, 823 F.2d at 777.

Once it is shown that he or she is unable to resume his or her previous employment, the burden shifts

to the Commissioner (Step 5) to prove that, given the plaintiff's mental or physical limitations, age,

education and work experience, he or she is able to perform substantial gainful activity in jobs

available in the national economy. *Campbell*, 461 U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203,

205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777.

Vocational Expert - Hypothetical Questions

The determination of whether a claimant retains the RFC to perform jobs existing in the

workforce at step 5 is frequently based in large measure on testimony provided by the vocational

expert. *Rutherford*, 399 F.3d at 553, citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)

(citations omitted). Where a hypothetical question to the VE accurately sets forth all of a claimant's

significant impairments and restrictions in activities, physical and mental, as found by the ALJ or

as  uncontradicted on the medical record, the expert's response as to the existence of jobs in the

national economy which the claimant is capable of performing may be considered substantial

evidence in support of the ALJ's findings as to the claimant's RFC. *See, e.g., Burns v. Barnhart*,

312 F.3d 113, 123 (3d Cir. 2002), *citing Podedworny*, 745 F.2d at 218 *and Chrupcala v. Heckler*,

829 F.2d, 1276 (3d Cir. 1987) (leading cases on the use of hypothetical questions to VEs).[4] *See also*

*Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical questions include

medical impairments, age, education, work experience and RFC); *Boone*, 353 F.3d at 205-06 ("At

---

[4]Conversely, because the hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the record "medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny*, 745 F.2d at 218.

the fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a vocational expert.'"). Objections to the adequacy of an ALJ's hypothetical questions to a vocational expert "often boil down to attacks on the RFC assessment itself." *Rutherford*, 399 F.3d at 554 n.8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform. *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002); *see also Id.* at 126 (The "Social Security Administration has taken administrative notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. § 416.966(d) (2002)). While an unexplained conflict between a VE's testimony and the relevant DOT job descriptions does not *necessarily* require reversal or remand of an ALJ's determination, the United States Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a remand. *Boone*, 353 F.3d at 206.

<u>Multiple Impairments</u>

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any

such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. § § 404.1523, 416.923).

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he or she must be found disabled if his or her condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in combination or alone, but must set forth the reasons for his or her decision, and *specifically* explain why he or she found that the claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli*, 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes that the medical evidence is inconclusive or unclear as to whether the claimant is unable to return to his or her past employment or perform other substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d 36.

<u>Claimant's Subjective Complaints of Impairments and Pain</u>

An ALJ must do more than simply state factual conclusions.  Instead, he or she must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected.  *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984);  *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981).  He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not fully confirmed by objective medical evidence.  *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993);  *Welch v. Heckler,* 808 F.2d 264, 270 (3d Cir.1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of his or her inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky*. Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work.  This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. *See* 20 C.F.R. § 404.1529(c).  *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

If an ALJ concludes that the claimant's testimony is not credible, the specific basis for such

a conclusion must be indicated in his or her decision. *See Cotter*, 642 F.2d at 705. Our Court of Appeals has stated: "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself.*" *Green,* 749 F.2d at 1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount the claimant's pain *without contrary medical evidence. Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) (emphasis added); *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present *evidence to refute the claim*. *See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

Medical Opinions of Treating Sources

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) . . . ." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

Moreover, the Commissioner/ALJ

> must "explicitly" weigh all relevant, probative and available evidence. . . . [and]
> must provide some explanation for a rejection of probative evidence which would

13

suggest a contrary disposition. . . . The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but she must *consider* all the evidence and *give some reason for discounting* the evidence she rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli,* 247 F.3d at 42-43 (although an ALJ may weigh conflicting medical and other evidence, he or she must give some indication of the evidence that he or she rejects and explain the reasons for discounting the evidence; where an ALJ failed to mention significant contradictory evidence or findings, the Court was left to wonder whether he considered and rejected them, or failed to consider them at all, giving the Court "little choice but to remand for a comprehensive analysis of the evidence consistent with the requirements of the applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him. . . .   Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

<u>Medical Source Opinion of "Disability"</u>

A medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as a statement that the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion  cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and

other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (i) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as an opinion that a claimant is "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination of disability. *Compare* 20 C.F.R. §404.1527(a-d) (2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case record," and states the circumstances in which an opinion of a treating source is entitled to "controlling weight." 20 C.F.R. §404.1527(b), (d) (2002).[5]  Medical opinions on matters reserved

---

[5]Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion." 20 C.F.R. 404.1527(d) (2002). Subsection (d)(2) describes the "treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual  examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case

for the Commissioner are not entitled to "any special significance," although they must always be considered. 20 C.F.R. §404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-2p, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner,[6] these Social Security Rulings provide that, because an adjudicator is required to evaluate *all* evidence in the record that may bear on the determination or decision of disability, "adjudicators must *always* carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must *never* be ignored.

---

record, *we will give it controlling weight*. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in  paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion*.

20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

[6]SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to his or her past relevant work, and whether an individual is "disabled" under the Act.

. . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2). *See* note 4, *supra*. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6).

State Agency Medical and Psychological Consultants

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I). See also SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must

17

be treated as expert opinion evidence of non-examining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

## V.    Discussion

In the instant matter, the ALJ resolved the issue of Plaintiff's disability at step four of the sequential evaluation process, finding that Plaintiff has the residual functional capacity to return to past relevant work as a car salesman. R. 23-24.  Plaintiff challenges the ALJ's determination at this step of the sequential evaluation process. Doc. No. 7 at 5-10.  Plaintiff first argues that substantial evidence does not support the ALJ's determination that he is capable of returning to past work as a car salesman, which is considered "light work"[7] under the *Dictionary of Occupational Titles*.  Doc. No. 7 at 5.  Specifically, Plaintiff argues that the ALJ failed to properly consider the medical evidence of record and Plaintiff's testimony regarding his functional limitations in determining his residual functional capacity.  Doc. No. 7 at 5-10. Moreover, Plaintiff argues, the ALJ failed to give proper weight to the opinions of Plaintiff's treating physician, namely Dr. Esman, in determining that

---

[7]

The Regulations define "light" work as work that involves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a fully or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §404.1567(b).

Plaintiff has the residual functional capacity to return to past relevant work at the light exertional level. Doc. No. 7 at 11-12. Because the Court finds the issue of whether the ALJ gave proper weight to the opinions of Dr. Esman to be dispositive of the instant matter, it will first address said issue, before turning to the issue of whether substantial evidence supports the ALJ's residual functional capacity determination.

**A.      Whether the ALJ Afforded Proper Weight to the Opinions of Plaintiff's Treating Physicians**

In making his residual functional capacity at step four of the sequential evaluation process, the ALJ gave significant weight to the opinions of the consultative examiner, Dr. Michael Cozza. R.23. Dr. Cozza performed a consultative physical examination of Plaintiff on April 28, 2006, and completed a medical assessment, indicating that Plaintiff would be capable of lifting 25 pounds occasionally, standing and/or walking five (5) hours a day and sitting up to eight (8) hours a day. R. 23; 259- 262.  Specifically, the ALJ noted that, on examination by Dr. Cozza, Plaintiff exhibited a normal range of motion and muscle strength, a level low back and well-healed scar on the lumbosacral region.   R. 23.   Further, the ALJ noted that Plaintiff had a limited active range of motion in forward flexion (limited to forty-five degrees), and less than five degree extension. R. 23. Plaintiff was capable of a straight leg raise to ninety degress. *Id*. The ALJ further mentioned the fact that Dr. Cozza's report indicates that there was no muscle atrophy and Plaintiff's muscle strength in his lower extremities was normal. *Id*.  The ALJ likewise gave weight to the state agency physician:

> At the state agency, the evidence was reviewed by Dr. Mortimer, who concurred in the opinion that the claimant is capable of performing light work.

R. 23.

While the ALJ gave Dr. Cozza's opinions and the opinion of the state agency physician

controlling weight in making his residual functional capacity determination, he rejected the opinions

of Plaintiff's treating physician, Dr. Judith Esman. R. 23-24. The ALJ specifically rejected Dr.

Esman's opinion that Plaintiff was unable to work in 2006 and 2007. The ALJ found:

> The claimant's primary care physician, Dr. Esman, has expressed the opinion at
> various points in her treatment notes that [Plaintiff] is disabled from all work. ...
> However, she does not describe any particular limitations upon the patient's
> functional capacity. The Social Security Administration accords controlling weight
> to the opinion of a treating physician where it is well supported by medically
> acceptable clinical and laboratory diagnostic techniques and is not inconsistent with
> the other substantial evidence. 20 C.F.R. §404.1527(d). However, this rule does not
> apply to statements of opinion upon the ultimate issue of disability, which is an issue
> reserved to the Commissioner. 20 C.F.R. §404.1527(e).

R.23-24.

Records from Dr. Esman indicate that Plaintiff was seen prior to his alleged onset date of

May 18, 2005. R. 284.  He was seen on December 22, 2004,  with complaints of low back pain. *Id*.

An MRI of the lumbar spine showed disc disease, most severe at discs L1-2 and less severe at L3-4

and L4-5.  R. 285.  Dr. Esman noted a right sided herniated disc at L4-5. Id.  At that time, Plaintiff

was prescribed a low dose of Celebrex and physical therapy. *Id*.

On May 24, 2005, Plaintiff was seen again by Dr. Esman, complaining of increased pain in

his low back, as a result of a May 18, 2005 motor vehicle accident. R. 282.  At this time, Dr. Esman

opined that it was too soon to assess the effects of the accident. *Id*. She prescribed an interlaminar

lumbar epidural steroid injection in Plaintiff's L5-S1 disc. R. 283.  Plaintiff received the injection

on June 6, 2005. R. 281.  On June 10, 2005, Plaintiff was prescribed Flexiril, as needed, for pain.

R. 280.

Plaintiff was seen for further follow-up with Dr. Esman on July 7, 2005.  R. 279.  Dr.

Esman's notes indicate that Plaintiff had not improved and that therapy and steroid injections had

not been effective.  *Id*. At this time, Dr. Esman opined that surgery may be necessary and ordered

an MRI.  *Id*.  She also indicated that Plaintiff would not be capable of performing his job for at least

thirty days as a result of his symptoms. *Id*.

   Plaintiff had a right L4-5 hemilaminectomy with microdiscectomy done on August 8, 2005

by Dr. Hikmat El-Kadi at UPMC Passavant Hospital. R.138, 180.  According to records from Dr.

El-Kadi, he performed a hemilaminectomy (removing part of the vertebral lamina) on the right side

and removed ligaments. *Id*.  He noted disc herniation, which was removed in a piecemeal fashion.

*Id*.  Dr. El-Kadi's records note that the disc was causing pressure on the nerve root, which was

relieved with the procedure. R. 181.  He noted no complications with the procedure. *Id*.

   Plaintiff was seen for follow-up by Dr. El-Kadi several times following the procedure.  Dr.

El-Kadi indicated at each of these times, in August 2005, October 2005 and November 2005, that

Plaintiff was not to return to work until reevaluated by him. R. 195-197.

   On December 15, 2005, Dr. El-Kadi saw Plaintiff for follow-up examination and noted that

his severe right leg pain had improved, but that Plaintiff complained of noticeable weakness in his

right leg and particular difficulty walking up and down stairs. R. 193.  Dr. El-Kadi also noted that

Plaintiff's exam was unremarkable and that nerve compression was much less than on previous

examinations. *Id*.  He noted post-operative scarring at L4-5. *Id*. At this time, Dr. El-Kadi did not

recommend surgery. *Id*.  He discontinued Neurontin, as it was not effective, and prescribed Plaintiff

Cymbalta. *Id*.  Dr. El-Kadi's records state that Plaintiff was "to remain off work due to his inability

to function well and complaints of low back and leg pain. I will reevaluate him in [two] months. He

is amendable to these recommendations." *Id*.

   An MRI exam on the lumbar spine performed on December 12, 2005 showed desiccated,

narrowed discs at T12-L1, L1-L2, L2-L3 and L3-L4. R. 186.  It also showed displacement of L1 on

L2 vertebrae and a small, central to right-sided disc protrusion at L1-L2.  *Id*.  There were also

bulging discs at L2-L3 and L3-L4.  *Id*.  Extradural abnormality was also noted, which the examining

physician believed was enhancing granulation tissue and scar. *Id*.

Plaintiff was seen by Dr. Esman again on July 7, 2006, for follow-up regarding

postlaminectomy syndrome. R. 278.  The records indicate that a right straight leg raise test was

positive on the right leg and negative on the left.  *Id*.  Testing also revealed persistent right ankle

dorsiflexion weakness[8] and restricted lumbar range of motion in all directions. *Id*.  Dr. Esman's

noted:

> [Plaintiff] seems to be doing reasonably well by maintaining activity limitation.  I do
> not foresee his being able to return to any gainful employment at any time in the near
> future.  We will continue the current medications, have him obtain the AFO,[9] and
> will see him in follow-up in about three months or sooner if needed.

R. 278.

On October 10, 2006, Dr. Esman noted that Plaintiff continued to have post-laminectomy

syndrome. R. 287.  He had obtained an AFO and was using it only to walk long distances.  R. 287.

He complained of lack of balance and tendency to stumble. *Id*.  Dr. Esman noted no change in pain.

*Id*.  Plaintiff indicated to her that the pain was not excessive, as long as he did not over exert himself.

*Id*.  He informed Dr. Esman that he needed a railing to go up and down stairs and noted weakness

---

[8]        Dorsiflexion refers to flexing or bending toward the exterior of the foot.
Weakness in this flexion often results in abnormal gait.  *Dorland's Illustrated Medical
Dictionary*, 31st Ed. 570 (Saunders, et al., eds. 2007).

[9]        AFO refers to an ankle foot orthosis.  *Dorland's Illustrated Medical Dictionary*,
31st Ed. 37 (Saunders, et al., eds. 2007).

in his right leg.  *Id*.  Plaintiff also indicated that he continued to take Mobic[10] with good result, but

took two on a bad day. *Id*.  On physical examination, Plaintiff's gait and stance were normal.  *Id*.

He had slight difficulty in tandem gait. *Id*.  A seated straight leg raise test was negative. *Id*.  Plaintiff

again exhibited right dorsiflexor weakness and lumbar range of motion was moderately restricted

in all directions, with pain at the end range. *Id*.  Dr. Esman assessed that Plaintiff's pain was

adequately controlled on Mobic and restricted activity. *Id*.  She recommended continuing both. *Id*.

She opined that balance issues would best be prevented using the AFO and did not prescribe a cane.

Regarding Plaintiff's ability to work, Dr. Esman again noted:

> [Plaintiff] does not really have a job to go back to and so is considered officially
> retired.  I am continuing to note that he is totally disabled from employment.

*Id*.  She indicated again that he was totally disabled from employment due to status post-

laminectomy. R. 288.

Plaintiff was seen by Dr. Esman again on January 11, 2007. R 289.  Dr. Esman again noted

that Plaintiff had post-laminectomy syndrome. *Id*.  Her records indicated that Plaintiff had no

significant changes since his October visit. *Id*.  She did note that he was no longer having problems

with stumbling on even surfaces, but continued to have difficulty going up and down steps due to

weakness in the right leg. *Id*.  There were no changes in straight leg raise test, right dorsiflexor or

lumbar range of motion. *Id*.  Again, Dr. Esman opined that Plaintiff was stable on the prescribed

regimen and remained "disabled from employment." *Id*.

On examination on May 16, 2007, Dr. Esman noted that Plaintiff was worse than his last visit

---

[10]     Mobic is the brand name for the generic drug, Meloxican, a non-steriodal anti-inflammatory drug used as a pain reliever. *Dorland's Illustrated Medical Dictionary*, 31st Ed. 1143, 1189 (Saunders, et al., eds. 2007).

in January 2007. R. 290.  Plaintiff complained that his right leg gives out when going up steps and

gets a sense of fatigue in his right calf.  *Id*.  She noted that he had increased Mobic from once every

other day to twice daily. *Id*.  She also noted that he took Toprol, Clonidine and Ambien.[11] *Id*.  At this

time, Dr. Esman indicated that Plaintiff had increased dorsiflexion in his right foot.  *Id*.  His lumbar

range of motion was limited in all directions, including flexion, extension and side bending.  *Id*.

Plaintiff indicated that his heel strike would begin slapping if he walked any distance. *Id*.   Dr.

Esman prescribed Neurontin[12] to address right leg symptoms and continued Mobic. *Id*.  Dr. Esman

noted that she encouraged Plaintiff to continue wearing his AFO and stated, "[t]here is not much else

to be done. We had previously tried an epidural steroid injection, but if anything, this seemed to

aggravate him." *Id*.

After a review of the entire record, the Court finds that the ALJ failed to properly consider

the opinions of Dr. Esman in making his residual functional capacity at step four of the sequential

evaluation process.  We will therefore remand for further consideration of Plaintiff's claim.

First, the Court finds that the ALJ failed to properly evaluate Dr. Esman's opinion regarding

Plaintiff's ability to work. In rejecting Dr. Esman's opinion that Plaintiff is unable to work, the ALJ

summarily recites the applicable standard, that the Commissioner "will accord controlling weight

---

[11]       Toprol is the brand name for the drug metoprolol succinate, used to treat
hypertension.  *Dorland's Illustrated Medical Dictionary*, 31st Ed. 1172, 1966 (Saunders, et al.,
eds. 2007).
          Clonidine is a drug used to treat migraines, anxiety and vasomotor symptoms.  *Id.*  at 379.
          Ambien is the trademark for the drug zolpidem tartrate, which is a sedative prescribed for
the short term treatment of insomnia.  *Id*. at 58, 2120.

[12]       Neurontin is the brand name for gabapentin, an anti-convulsant normally
prescribed to treatment seizures.  *Dorland's Illustrated Medical Dictionary*, 31st Ed. 764, 1287
(Saunders, et al., eds. 2007).

to the opinion of a treating physician where it is well supported by medically acceptable clinical and laboratory diagnostic techniques and it is not inconsistent with the other substantial evidence." R. 24 (citing 20 C.F.R. §404.1526(d)).  He further correctly notes that a treating physician's opinion on an issue reserved to the Commissioner, *i.e.*, an ultimate determination of disability, will not be afforded *controlling* weight.  *Id*. *See  Adorno*, 40 F.3d at 47-48 (citations omitted); 20 C.F.R. §404.1527. Without further explanation of why Dr. Esman's opinion are not supported by substantial medical evidence, however, the ALJ  apparently rejected Dr. Esman's opinions in their entirety.

While the ALJ's recitation of the law is correct and a treating physician's opinion on an ultimate disability determination is neither dispositive, nor controlling, *Adorno*, 40 F.3d at 47-48 (citing *Wright v. Sullivan*, 900 F.2d 675, 684 (3d Cir. 1990)), and are likewise afforded no special significance, 20 C.F.R. §404.1527(3)(1-2), the ALJ was nonetheless required to evaluate Dr. Esman's opinions regarding Plaintiff's ability to perform work and carefully consider them in making his disability determination. *See* 96-5p (finding that a treating physician's opinion that a claimant is "disabled" or "unable to work" are reserved to the Commissioner, but "[s]uch opinions on these issues must not be disregarded"). *See also Plummer*, 486, F.3f at 429 (citing *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985)) (holding that an ALJ may afford a treating physician's opinion on a matter reserved to the Commissioner less weight "depending on the extent to which supporting explanations are provided"). Here, the ALJ merely made a conclusory statement of the applicable law, without any evaluation of the medical evidence of Plaintiff's treating physicians. R. 24. In particular, his opinion fails to specify what, if any, medical reports provided by Dr. Esman he weighed in determining that her opinions regarding Plaintiff's ability to work were entitled to any weight. *See Adorno*, 40 F.3d at 47-48 (citations omitted) (holding that, "the ALJ must weigh the

25

relative worth of a treating physician's [opinion of disability] against the reports submitted by other physicians who have examined the claimant").

Indeed, in this case, while there are extensive treatment records from Dr. Esman, in addition to her conclusions regarding Plaintiff's ability to return to work, the ALJ failed to note which of these records, if any, he reviewed.  In weighing the record medical evidence, the ALJ failed to give specific reasons for indicating which medical records from Dr. Esman he rejected and his reasons for reaching that evidence.  R. 19-24.  As a result, the Court is without information as to whether the medical evidence provided by Dr. Esman was reviewed or simply ignored.  *See Burnett*, 220 F.3d at 121 (citations omitted). Furthermore, the ALJ failed to give adequate reasons for rejecting Dr. Esman's opinions in their entirety.  Indeed, if the ALJ had doubts as to why Dr. Esman opined that Plaintiff was unable to return to work, he should have made every effort to contact Dr. Esman in order to clarify said opinions.  SSR 96-5p.  *See also Foley v. Barnhart*, 432 F.Supp. 2d 465, 479 n. 8  (M.D. Pa. 2005); *Emery v. Astrue*, Civ. A. No. 08-551, 2009 WL 3030742 at *12 (W.D. Pa. September 17, 2009). Moreover, he was required to give more than a summary statement of the applicable law in rejecting the entire medical evidence related to Dr. Esman's treatment of Plaintiff. *See Morales*, 225 F.3d at 317.  The Court will therefore remand for further consideration of Plaintiff's residual functional capacity and his ability to return to past relevant work.

Furthermore, the Court finds that the ALJ, in rejecting Dr. Esman's treatment records and opinion in their entirety, failed to give adequate weight to Dr. Esman's records. While the ALJ was permitted to weigh the record medical evidence, he was required to accord medical records from Plaintiff's treating physicians "great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition ... .'" The ALJ, in his opinion, incorrectly

26

identifies Dr. Esman as Plaintiff's "primary care physician." R. 23. However, like Dr. Cozza, Dr. Esman is a board- certified in physical medicine and rehabilitation. *See* Dr. Judith H. Esman's biography at Tri Rivers Surgical Associates webpage, http://www.tririversortho.com/physician_detail.asp?id=23 (last visited October 7, 2009). Indeed, Plaintiff's medical records evidence that Dr. Esman treated Plaintiff specifically for his back disorder continuously for over two years. R. 284-290. She prescribed physical therapy, evaluated MRI tests and prescribed a pain control regime during this period of time. *Id*. During each of his visits with Dr. Esman, Plaintiff was given a physical examination, after which Dr. Esman indicated that he was to refrain from working. R. 278, 288, 290. The ALJ did not specify how he determined that Dr. Esman's opinions were entitled to no weight. R. 23-24. Dr. Cozza, however, whom the ALJ accorded controlling weight, saw Plaintiff only once before rendering an opinion as to Plaintiff's exertional limitations. R. 259-60. The ALJ was permitted to accept Dr. Cozza's evidence and reject Dr. Esman's evidence, but was required to give adequate reasons for doing so, which he failed to do. *See Morales*, 225 F.3d at 317 (holding that when the medical evidence of records conflicts, the ALJ may not credit some evidence over the other for an incorrect reason or for no reason at all).

**B.     Whether Substantial Evidence Supports the ALJ's Residual Functional Capacity Determination**

In support of his motion for summary judgment, Plaintiff further argues that the ALJ's determination is not supported by substantial evidence, because he failed to consider all of the medical evidence of record. Doc. No. 7 at 6-8. Furthermore, he argues that the ALJ failed to give proper weight to Plaintiff's own testimony regarding his functional limitations. Doc. No. 7 at 10.

First, as discussed above, the Court agrees that the ALJ failed to properly consider the

27

opinion of Plaintiff's treating physician Dr. Esman.   The Court notes that, likewise, the ALJ's determination failed to acknowledge that on follow-up examination, Dr. El-Kadi ordered Plaintiff to refrain from working,  R. 195-197,  which may or may not support Dr. Esman's opinions regarding Plaintiff's limitations. He likewise failed to discuss the medical records from Dr. El-Kadi in regard to his residual functional capacity determination. R. 23-24.   In making his residual functional capacity determination, the ALJ was required to review the *entire* record. *Burnett*, 220 F.3d at 119.   Again, without any mention of how Dr. El-Kadi's treatment records were considered in making his residual functional capacity determination, the Court is without a basis for determining whether the ALJ credited or rejected said evidence.  *See Id.* at 121 (citations omitted).

Furthermore, in making a residual functional capacity determination, the ALJ is required to consider both medical and non-medical evidence, including Plaintiff's own subjective complaints of pain and limitations.  *Id*. at 119-20.  Evidence in the form of a claimant's testimony regarding his or her ability to perform work activities must be considered in light of the record medical evidence. *Id*.  Because the Court finds that the ALJ failed to properly consider the record medical evidence in making his residual functional capacity determination, on remand he should reconsider Plaintiff's subjective complaints in light of the medical evidence in reexamining said determination.

28

**VI.     Conclusion**

The Court finds that, because the ALJ failed to adequately consider the evidence of record, his determination is not supported by substantial evidence at step four of the sequential evaluation process.  Therefore, the Court will remand this case in accordance with Section 405(g).  The case will be remanded for further proceedings consistent with this opinion.  An appropriate order will follow.


s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge


cc: All counsel of record